## 8938

### HAMILTON v. HAMER *ET AL.*

#### (82 S. E. 997.)

PLEADINGS. AMENDMENTS. DEEDS. CONDITIONAL CONVEYANCE. MORT-
    GAGE. CONTRACTS. SPECIFIC PERFORMANCE. USURY.

1. The Court may in its discretion, under Code Civ. Proc., sec. 224,
   permit at the final hearing, an amendment to an answer to conform
   same to the facts proven.
2. Where at the time a deed absolute on its face was executed a bond
   was also executed by the grantee showing that the deed secured a
   debt by which the grantee agreed to reconvey upon payment of the
   amount due within five years, and the conduct and acts of the parties
   showed that they construed the sale as a conditional one, the grantor
   was entitled to have the land reconveyed upon payment of the
   amount due, though more than five years had elapsed.
3. A conveyance of land to a grantee, upon condition that he recon-
   vey to the grantor at a specified time upon payment of a specified
   sum, held not to be a usurious transaction.

Before SHIPP, J., Dillon, August, 1909. Reversed.

Action by Wm. A. Hamilton against W. M. Hamer and
J. W. Hamer. From a decree dismissing the complaint,
plaintiff appeals. The facts are stated in the master's
report and the Circuit decree, which together with the excep-
tions thereto, are as follows:

This action was commenced by the plaintiff against the
defendant, W. M. Hamer, to compel the reconveyance, by
said defendant to the plaintiff, of 87 acres of land, in said
county, known as the Charity Hamilton lands, which land
was deeded on January 3, 1894, by the plaintiff to said
defendant, as is alleged in his complaint, as security for a
debt of $1,000 which plaintiff owed said defendant, and fur-
ther alleges that at the same time a bond for title for the
reconveyance to him by defendant was executed and deliv-
ered to him.

The master finds that the deed was so executed on the
day alleged in usual form of conveyances of real estate,

which is in evidence, marked Exhibit B. That the paper designated on its face "bond for title," was executed by said defendants, and delivered to the plaintiff at the same time, said paper being in evidence, marked Exhibit D.

In his answer defendant, W. M. Hamer, denies that said deed was accepted by him as security for a debt; alleges that it, the land, is owned by him in fee, "subject to the contract of sale mentioned in paragraph III of the answer." (Which is same above referred to as Exhibit D. )

He admits the tender of $1,000 for the reconveyance of the lands in dispute. "Alleges that he was ready and willing to perform his part of the said agreement during the continuance of said option, but that the plaintiff not only failed and refused to comply with the condition thereof on his part, but alleged his inability to do so, and expressly waived, rescinded and surrendered any claim or right he may have had to a conveyance of said premises to him."

In the view the master takes of the case the foregoing are the material allegations necessary to be noted or referred to in his report.

The "bond for title" (Exhibit D), written and signed by the defendant, W. M. Hamer, shows that the $1,000, consideration named in the deed made by plaintiff to defendant, was "for purchase money for E. D. Hamilton's interest in said land balance to cover mortgage held against W. A. Hamilton by J. W. Dillon & Son."

The purchase money for deed from E. D. Hamilton to plaintiff was $770 and was paid by defendant. The balance of the $1,000 was paid by Hamer to Dillon & Son for a mortgage of the plaintiff to them, which was assigned to W. M. Hamer, and is in evidence, marked Exhibit A.

As part of the agreement of sale and bond for title, plaintiff was to pay Hamer $110.00 annually for "rent until said place (the 87 acres) is paid for in full, or the bond shall become null and void." Judging from the testimony of each (and the master gives each credit for honesty and

truthfulness), the minds of the parties never met as to the real contract between them; but each is bound by the deed and bond for title. The testimony of each sustains his view of the transaction, and it is probable that each one is correct as he understood it.

In his contention the plaintiff is supported by the following facts as testified by the several witnesses named: The plaintiff says that the $110.00 was for interest and taxes. The defendant, W. M. Hamer, says (Tes., page 37), "I told him he could have the land for $110.00, which would just cover taxes and ten per cent. interest on the money." On page 38 he says, "Did not intend to sell as long as it (the land) paid interest on the money." This sum ($110.00) was agreed on at the beginning, and maintained for twelve years, notwithstanding the great fluctuations in the value of rents of lands and cotton, and increased rate of taxation. The plaintiff made considerable improvements on the land by building houses, barns, clearing land and ditching; all of which naturally increased its rental value. The value of the land at the time of the negotiations and execution of the papers should be considered.

Besides the $770.00 paid for the E. D. Hamilton tract of the 87 acres, and the necessary cost of preparing the papers and recording, which could not have been very much, the only other money paid by Hamer for Hamilton was to J. W. Dillon & Son for the mortgage (Ex. A). A calculation on the mortgage shows that $166.32 was due thereon January 1st, 1894. Defendant, Hamer, in his testimony (page 37), says: "I think I paid $193.00. When he got the mortgage I told him to transfer it to me rather than mark it paid. I did this in order to look up the records to see if there was anything else against him." The $193.00 was all the consideration the plaintiff received for his twenty acres of land, which most of the witnesses testify was then worth from $400.00 to $600.00. In his testimony (page 2) plaintiff says: "I was offered $600.00 and $650.00 by two

different parties; Tom Ammons and Ira Wallace." He says these offers were made just before or right after the transaction with W. M. Hamer.

In his testimony (page 25), Ira L. Wallace says it was about 1892 or 1893 he offered the plaintiff $600.00 for the 20-acre tract of land. Wallace says (Tes., page 24), "It (the 87 acres) was worth from $1,500 to $2,000." He puts Hamilton's improvements at $500.00. W. M. Proctor puts the same value on it, in 1894, and says the 20-acre tract was the more valuable of the two, per acre, and values it at from $25.00 to $30.00 per acre. He sold 74 acres of adjoining lands for $2,400.00. He values the improvements of Hamilton at from $350.00 to $400.00. S. M. Britt puts the value of the 87 acres at $20.00 or $25.00 per acre, in 1894; $35.00 in 1899 and $50.00 now. H. E. Proctor puts same value on it. T. A. Dillon, a witness who has long experience, conducting farming and mercantile business in that section, values the land at $20.00 per acre in 1894—$1,740.00. The defendant and R. P. Hamer, his father, think that $1,000 was full value at that time.

From the testimony the master finds that at the time the deed was made by plaintiff to defendant, W. M. Hamer, January 3, 1894, the land was worth at least $20.00 per acre, or $1,740.00, and that it was considerably increased in value within a few years by the improvements made by the plaintiff and higher prices of cotton and lands. The master merely mentions these facts to throw some light upon the transaction of the parties at the time of the transactions.

Doubtless the defendant, Hamer, thought and intended the "bond for title" as merely a conditional sale, an option as it were, limited within five years.

It is equally clear that the plaintiff regarded it as giving him an equity of redemption. When the five-year limit expired he asked for further time, which Hamer says he

granted; further says (Tes., page 38), "I told him I would not object to giving him five years."

In construing the paper ("bond for title"), the master finds that it has the same effect, in connection with plaintiff's deed to defendant, as if written in it, and the same as the defeasance clause in a mortgage would have. When the defendant paid the $770.00 to E. D. Hamilton for the 67 acres of land, deed for which was made to plaintiff, and paid plaintiff's mortgage to Dillon & Son, taking assignment thereof to himself, *ipso facto,* plaintiff's obligation or indebtedness was shifted to the defendant, and he recognizes that in the "bond for title" which says, "In case Wm. A. Hamilton pays to me $1,000.00, without hurt or damage, within five years, I bind myself, executors and administrators, to make to him a deed for 87 acres of land, more or less, known as the Charity Hamilton lands."

Under the decisions of our Supreme Court, and all authorities on equity jurisprudence, the several acts would fix the character of the deed from plaintiff to defendant, making it a mortgage.

In this view of the case, under the deed the plaintiff, W. A. Hamilton, had an equity of redemption and the only way it could be destroyed would be by foreclosure or by a sale thereof to defendant, Hamer, for valuable consideration. In his Equity Jurisprudence, Pomeroy gives as the general criterion by which the distinction between a deed and a mortgage is made in the following language: * * * "the existence of a debt or liability between the parties, either existing prior to the contract, or * * * arising from a loan made at the time of the contract, or for any other cause, and this debt is still left subsisting * * * so that the payment stipulated for in the agreement to reconvey is in reality the payment of this existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used, and whatever stipulations they may have inserted in the instrument, etc."

The doctrine that "once a mortgage always a mortgage" is held by all authorities, and has been sustained by all the Courts of all the States, including our own.   In section 1193, Pomeroy's Equity, the following language is laid down:

"The debtor or mortgagor can not in the inception of the instrument, as a part of, or collateral to its execution, in any manner deprive himself of his equitable right to come in, after a default in paying the money at the stipulated time, and to pay the debt and interest, and thereby redeem the land from the lien and incumbrance of the mortgage; the equitable right of redemption, after a default is preserved, remains in full force, and will be protected and enforced by a Court of equity, no matter what stipulations the parties may have made in the original transaction purporting to cut off this right."

Jones on Mortgages (sec. 244) lays down the same doctrine, only more strongly: "Such a deed and agreement to reconvey the estate upon payment of a certain sum of money * * * have always been held to constitute a legal mortgage, if the instruments were of the same date, or were executed and delivered at the same time, and as one transaction."   As to interest, see secs. 273-4-5-6.   In sec. 250: "The intent of the parties contrary to the rules of law avails nothing."   Such transaction "constitutes a mortgage, although it is stipulated, that if the grantor fails to repay the sum within the time specified, the agreement shall be void and the deed absolute, *'with no right of redemption.'* " Further, Jones holds that such language or stipulation "is in fact regarded as quite decisive of the understanding of the parties that the transaction was a conveyance of the land, defeasible upon the payment of money."   See also sec. 277: "But if the instrument on its face be a mortgage, or if a deed and bond of defeasance be executed together as part of same transaction, and, therefore, constitute a mortgage, parol evidence is not admissible to show that the par-

ties intended that the transaction should operate as a conditional sale. No agreement or intention of the parties, whether at the time of the transaction or subsequently, can change the redeemable character of a mortgage." See also 264 and 265 and 328. Sec. 329: "Inadequacy of price is also a circumstance tending to show that the transaction is a mortgage rather than a sale."

In case, *Brownlee* v. *Martin,* 21 S. C. 400, in delivering the opinion of the Court, Chief Justice McIver says: "Deed absolute on its face may be shown to be a mortgage, executed merely as security for debt * * * the terms of the execution are not merged in any subsequent written agreement entered into by the parties. If intended as security for a debt it will operate only as a mortgage, and can not be converted by any subsequent agreement into an absolute conveyance, unless based upon sufficient consideration and fairly made without undue influence by creditor; and the burden of showing this is on the mortgagee. In other words, must amount to sale of equity or redemption fairly made and upon sufficient consideration." He quotes numerous authorities to sustain this opinion.

In *Hodge* v. *Weeks,* 31 S. C. 276, 9 S. E. 953. the adverse discussion turned upon the loss of the written contract to reconvey, and Justice McGowan, delivering the opinion of the Court, says, "the loss of the paper was a great misfortune to the plaintiff," intimating that if it had been in evidence the decision would have been for the plaintiff. Also it was shown that original party to the transaction was dead.

The same doctrine is held in cases in 48 S. C. 50 and 55 S. C. Reports. In most of the cases relating to deeds absolute on face, claimed to be only mortgages, before our Court, no accompanying agreement or papers constituting a defeasance were produced as parts of the transactions between the parties. In such cases the Courts have held, and rightly, that the testimony to change to a mortgage must be clear and convincing. In all cases it is stated that each case must

depend upon the peculiar conditions and circumstances surrounding the parties at the time of the transaction.

In the complaint there is an allegation of usury, but in their argument counsel did not insist upon this claim; and no testimony was adduced on this point.

Wherefore, the master recommends that upon the payment by the plaintiff, W. A. Hamilton, to the defendant, W. M. Hamer, of $1,000.00 and interest, at eight per cent. per annum, from January 1st, 1906, that said defendant be required to convey to the plaintiff the 87 acres of land, known as the Charity Hamilton lands, conveyed by plaintiff to defendant by deed dated January 3d, 1894.

As to the claim of the defendant, James W. Hamer, the master finds that he has never paid anything for his purchase of said lands, and, therefore, does not occupy the position of a purchaser for valuable consideration without notice.

Defendant's exceptions to report of master:

First. Because said master erred in holding:

I. That the written agreement between the plaintiff and the defendant, William M. Hamer, in evidence in this case, construed in connection with the deed from the plaintiff to said defendant was not a conditional sale.

II. Because the transaction between the plaintiff and defendant at the time of the execution of the paper denominated "bond for title," and the deed from the plaintiff to the defendant, William M. Hamer, fixed the character of said deed as a mortgage; whereas, it is respectfully submitted, that not only the weight of the testimony, but all the testimony on that subject, which stands uncontradicted. establishes that the said defendant refused to enter into the said transaction except upon an absolute sale on the part of the plaintiff and a purchase by said defendant, with an option on the part of the plaintiff to repurchase said tract of land upon complying with the condition set forth in the said bond for title.

III. Because the presumption is that the deed from the plaintiff to said defendant, W. M. Hamer, is what it purports to be, and the burden of proof was upon said plaintiff to establish the contrary, and if, as the master holds, "the minds of the parties never met as to the real contract between them, but each is bound by the deed and bond for titles, he should have found accordingly, and held that the plaintiff had failed to prove the material allegations of his complaint.

IV. That at the time of the transaction between the plaintiff and said defendant, W. M. Hamer, the premises described in said deed were worth $1,740.00, whereas, he should have held that the weight of the testimony, and all the testimony by reliable witnesses, clearly established that said premises had no fixed market value at that time on account of the disturbed condition and financial distress of the country.

V. That the plaintiff had an equity to redeem said premises by payment of the amount mentioned in said bonds for titles, whereas, he should have held that the plaintiff had failed for ten years or more to comply with the conditions of the conditional sale between him and said defendant, W. M. Hamer, and hence had lost any equity he might have had under said bond for title.

VI. That the assignment to the defendant, W. M. Hamer, of the bond and mortgage held by Dillon & Son on plaintiff, constituted a valid subsisting debt from the plaintiff to said defendant, whereas, the uncontradicted testimony establishes that said mortgage was, in fact, paid at the time of said transaction and the assignment was executed only to protect said defendant from any intervening liens.

VII. That there was a subsisting and existing debt for which the plaintiff was bound to pay to the defendant, the said W. M. Hamer, which was necessary to change said deed, absolute on its face, into a mortgage; whereas, it is respectfully submitted, the testimony clearly established

that the plaintiff was indebted to the defendant only for the rent of said premises, according to the terms of said bond for titles, and not for the purchase money of said premises.

Second. That the master erred, it is respectfully submitted, in not holding:

I. That the testimony, both written and verbal, of the transaction on the 3d day of January, A. D. 1894, between the plaintiff and the defendant, W. M. Hamer, constituted a conditional sale which the plaintiff had not complied with, and hence, had forfeited all rights and equities under the bond for title in evidence in this action.

II. That the presumption is that the deed from the plaintiff to the defendant, W. M. Hamer, absolute on its face, is what it purports to be, and that the burden of proof was on the plaintiff to prove to the contrary, and that the evidence offered in this action is not sufficient to overcome that presumption or to comply with that rule of evidence.

III. That in order for a deed absolute on its face to be construed into a mortgage, there must be proof of the existence of a debt between the parties either before or arising at the time the deed is executed, and there being no such proof in this action, the plaintiff fails in establishing the material allegations of his complaint, and hence is not entitled to the relief demanded.

IV. That the defendant, the said W. M. Hamer, refused to advance or loan to the plaintiff the sum of money mentioned in said bond for title and to take a mortgage to secure the payment thereof, but paid said sum only upon the agreement and understanding that the sale was absolute unless the plaintiff complied with the conditions of said bond for title.

V. That the deed absolute on its face is what it purports to be and the bond for titles held by the plaintiff was the only rights he had, and the two together established a conditional sale with which the plaintiff has for over ten years

failed and refused to comply, and hence has lost all rights and equity to repurchase said premises.

VI. That the deed from the plaintiff to the said defendant, W. M. Hamer, which is absolute on its face, and the bond for titles, construed in connection with what took place at the time of the transaction and since that time, especially in connection with the fact that the tract of land in question has been returned for taxation in the name of said defendant, and he has from year to year paid the taxes thereon, though the same has varied in amount, clearly establishes that such transaction does not amount to a mortgage, but a conditional sale, with which the plaintiff has not complied, and hence, that he is not entitled to the relief demanded.

Plaintiff's exceptions to report of master:

I. Because the master erred in overruling the plaintiff's plea of usury, and holding that counsel for plaintiff did not insist upon the claim of usury in their argument, and that no testimony was adduced on this point, it being respectfully submitted that counsel for plaintiff only offered in open Court that if the defendant, W. H. Hamer, would reconvey to the plaintiff the mortgaged premises, he would pay the mortgage debt in full and withdraw his complaint, including the plea of usury, and that after this offer was refused by the said defendant the plaintiff, through his counsel, insisted upon the plea of usury, which was amply supported by the evidence before the master, which showed beyond all doubt that the plaintiff only received from the defendant, W. M. Hamer, one thousand ($1,000.00) dollars and paid one hundred and ten ($110.00) dollars annually, or eleven per cent. on the amount borrowed for the use of the same, designated as rent for the mortgaged premises.

II. Because the master erred in holding that the plaintiff should pay to the defendant, W. M. Hamer, eight per cent. interest on one thousand ($1,000.00) dollars, the amount borowed, from January 1st, 1906, to the date of payment, after finding that the plaintiff had paid to the defendant,

W. M. Hamer, all interest to January 3d, 1906, and that
the said defendant admitted that the plaintiff had made to
him on the 2d day of October, A. D. 1905, a tender of one
thousand ($1,000.00) dollars, the amount of the mortgage
debt, it being respectfully submitted that interest stopped
from the date of such tender.    Dated August 12, 1907.

Circuit decree:

This cause came on to be heard by me on exceptions to
the report of the master in which he finds, substantially,
that the deed executed by the plaintiff to the defendant,
Wiliam M. Hamer, though absolute on its face, yet taken
in connection with the instrument of writing called "bond
for title" was intended as a mortgage, hence that upon the
payment of the amount due, said defendant should be
required to convey to the plaintiff the premises in question.

Obviously, the main object of the action is to have the
deed, although absolute upon its face and containing the
usual covenants of warranty, with relinquishment of dower,
declared a mortgage.    The amended complaint alleges, in
brief, that on January the 3d, 1894, the plaintiff, being the
owner in fee of two tracts of land, the one of twenty, and
the other of sixty-seven acres—the former conveyed to him
by Charity Hamilton, and the latter by Alexander D. Hamil-
ton, of Rhode Island, to whom it had been conveyed by said
Charity, and both known as the "Charity Hamilton lands"
—made to the defendant, Wiliam M. Hamer, a convey-
ance of the same, but that such deed was executed and
accepted as a security for the loan of one thousand dollars
made by said defendant to the plaintiff, and upon the express
agreement that said defendant would reconvey said premises
upon the repayment of said loan with interest; that said
defendant, at the same time as a part of said agreement,
made and delivered to the plaintiff a bond for titles, a copy
of which is set out in the complaint, and is as follows:

Bond for Titles. State of South Carolina, County of Marion.

Know all men by these presents, that in case William A. Hamilton pays to me one thousand dollars, without hurt or damage, within five years from date, I bind myself, executors and administrators, to make him a deed for eighty-seven (87) acres of land, more or less, known as the "Charity Hamilton lands;" the above amount being purchase money for A. D. Hamilton's interest in said place, and to cover mortgage held against William A. Hamilton by J. W. Dillon & Sons. This bond is signed and sealed with the express understanding that William A. Hamilton is to pay me one hundred and ten ($110.00) dollars rent for each and every year, by October the first, until said place is paid for in full. On failure to secure rent for each year in advance on January 1st of each year, by whatever I may demand, this contract or bond shall become null and void. Signed and sealed the 3d day of January, 1894. ("In advance" put in.) (Signed) W. M. Hamer. (L. S.)

The complaint further alleges that said sum of $110.00, though expressed as annual rent in said bond, is actual interest of the loan at 10% per annum, and $10.00 is for taxes on the land conveyed, and is so denominated in order to evade the provisions of the statute against usury. It is further alleged that the plaintiff, on October the second, 1905, tendered to said defendant the said sum of $1,000.00, which he refused to accept, and that defendant has since been ready and willing to pay said sum, but defendant has refused, and still refuses, to accept the same.

For a second cause of action the complaint repeats the foregoing allegations, and alleges further, that the plaintiff has annually paid to said defendant the sum of one hundred and ten dollars as interest upon the loan of said $1,000.00, the whole aggregating $1,320.00, whereby said defendant has unlawfully exacted from the plaintiff the sum of thirty dollars per annum usurious interest, and thereby has for-

feited the entire interest upon said loan from January the third, 1894, and in addition thereto has become liable to the plaintiff, in an amount double the sum of the usurious interest received by him. There is also an allegation that the defendant, James W. Hamer, claims some interest or lien upon said real estate.

The amended answer of defendant, William M. Hamer, for a first defense, admits that at the time alleged, the plaintiff was the owner of the first tract of twenty acres mentioned and described in the complaint, and had legal title to the second described tract containing sixty-seven acres, but he alleges that he paid the whole of the purchase money of said second tract at the time of purchase, and title thereto was taken in the name of the plaintiff in trust only, for him. He further admits the execution by him of the instrument of writing denominated "bond of titles," the tender of $1,000.00 and his refusal to make title, but he denies that the deed of conveyance was executed by the plaintiff or accepted and received by him other than as an absolute sale and conveyance of the property therein described, and denies further that the plaintiff then, or since that time, was indebted to him for the purchase money, or any part thereof of said premises. For a second defense, the answer, in substance, alleges that a short while prior to said date plaintiff approached him for the purpose of selling to him the 20-acre tract, giving as a reason therefor that he had given a mortgage on same which was past due ten or more years, and about to be foreclosed, and which he could not pay, and when defendant declined to buy said tract on account of its small acres, plaintiff stated that he personally could buy the second described tract of sixty-seven acres, then owned by his cousin in Rhode Island, but of which he was in possession and had control as tenant and agent, for the sum of $770.00, and would do so for said defendant and convey both tracts if he, said defendant, would pay the purchase price of the one, satisfy the mortgage on the other, and

give plaintiff the option or privilege of repurchasing same at any time within five years at and for the sum of $1,000.00, he in the meantime paying to said defendant each year a reasonable rent for the premises.  The answer further alleges that not having funds of his own with which to make said purchase, but ascertaining that he could borrow the necessary amount from an aunt, secured by his note indorsed by his father, he, said defendant, verbally entered into an agreement with the plaintiff to the purport above recited, and in accordance therewith he prepared, or had prepared, and sent to be executed, a deed for the 67-acre tract which, when returned, he took out of the express office, paying the draft attached thereto, for $770.00, had the same recorded and has been in possession thereof ever since; that he also paid the amount due on the mortgage, but as it was a considerable distance to the courthouse, and impossible at that time to examine the records, he took an assignment of the mortgage to protect him from any subsequent liens or incumbrances; that it was in accordance with the foregoing agreement of purchase and sale, definitely and expressly understood and agreed to by plaintiff, that the deed in question and the bond for titles were executed, and he emphatically denies that the deed is other than on its face it purports to be, or that it was given or taken as a mortgage, or as security for any debt due by the plaintiff to the defendant, and on the contrary, he alleges, that when he declined to purchase said twenty acres as aforesaid, said plaintiff made the effort to borrow from him, said defendant, an amount sufficient to pay the mortgage aforesaid, but defendant declined to have anything to do with either of said tracts upon the express, positive and unequivocal understanding and agreement that he was purchasing same absolutely and in good faith, with the option or privilege on the part of the plaintiff to repurchase the same upon the performance of the conditions set forth in said bond for titles. After admitting the tender of the $1,000.00 at the time

mentioned, and his refusal to accept same, said defendant
pleads a general denial of each and every allegation of the
complaint not admitted by, or inconsistent with, the fore-
going; and for a third defense he alleges that he was ready
at any time during the period therein mentioned, to per-
form on his part the conditions of said bond for titles had
plaintiff complied with the same on his part, but that plain-
tiff not only had failed and refused, on his part, to perform
the conditions of said bond during said period of five years,
but he made no offer or tender to perform same at any time
prior to October 2d, 1905, more than ten years after execu-
tion of the bond for titles, and then only after receiving
notice that defendant had 'sold the property, and that he,
said plaintiff, must surrender possession; and he claims
that by his laches and negligence the plaintiff had waived,
forfeited and surrendered any equity he might otherwise
have had under said bond for titles.

The defendant, James W. Hamer, pleads a general denial
and claims to be a purchaser for value without notice.

The exceptions, though numerous, all go to the question,
the obviously controlling issue in the case, to wit: whether
the testimony is sufficient to show that the transaction
between the plaintiff and the defendant, William M. Hamer,
amounted to and was intended to be the loan of money by
the one party, and the borrowing and giving security by the
other? In other words, do the deed and instrument of
writing denominated in the complaint and by the parties as
"bond for titles," taken in connection with the situation
and circumstances attending the execution of these papers,
as disclosed by the testimony, establish the relation of
mortgagor and mortgagee between the plaintiff and said
defendant? Or, to put the question in still another form,
Is the deed what on its face, it purports to be, an absolute
conveyance? and is the bond for titles what its language
indicates—a conditional sale? Do these papers—the one
containing all the covenants of warranty usually found in

absolute conveyances for value, with relinquishment of the wife's inchoate right of dower, the other clear, unambiguous and unequivocal, and both executed with the formality and solemnity usually attending upon the execution of instruments of such great importance—contain and express the real contract between the parties? or is that contract of an absolutely different import, having an entirely different effect?

In considering this question it will be observed that the complaint alleges and the plaintiff admits that the instrument of writing designated "bond for titles," executed by the defendant, W. M. Hamer, at the time of the transaction, contains and imports the contract entered into and to be performed by him. The deed unquestionably contains the contract on the part of the plaintiff. The two, therefore, contain and embrace the contract made and entered into by the parties. Being in writing, to what extent is parol proof admissible to affect the same? When it is alleged that a deed, though absolute on its face, was executed on some agreement or condition to be performed on the part of the grantee, which agreement or condition, it is also alleged, is in writing, do not the two writings constitute the highest and best evidence of what the real agreement is, and is parol proof admissible to vary the terms of such written contract? Greenleaf on Ev., sec. 277; *Sullivan* v. *Williams*, 43 S. C. 501, 21 S. E. 642; *Brown* v. *Moon*, 57 S. C. 69, 35 S. E. 415; *Petty* v. *Petty*, 52 S. C. 54, 29 S. E. 406; *Miller* v. *Price*, 66 S. C. 85, 44 S. E. 584; *Hodges* v. *Weeks*, 31 S. C. 276, 9 S. E. 953; *Wallace* v. *Johnson*, 129 U. S. 58, 9 Sup. Ct. 243 (32 Law Ed. 619). If this be true, then there can be but one opinion as to the contract between these parties. The deed conveys the premises in question absolutely to the grantee, the defendant, W. M. Hamer, while the bond for title executed by said defendant obligates him, his "executors and administrators" (?) to sell and reconvey the same to the plaintiff only upon condition of the payment of the

specified sum of money at any time within the period mentioned. We then have the very elements and conditions which constitute a conditional sale, or, to use the language of Chief Justice McIver in *Brown* v. *Bank of Sumter,* 55 S. C. 51, 32 S. E. 720—distinguishing such transactions from a mortgage—"an absolute sale, with an agreement allowing the vendee to repurchase the lands at a special price, and within a time limited." The plaintiff having failed to comply with, and to perform these conditions, has, his counsel properly admits, upon such assumption, forfeited any claim and right he had, and hence is not entitled to recover in this action.

Be this as it may, however, and waiving for the purpose of this inquiry, any such consideration, let us narrow the issue down to the inquiry whether the testimony is sufficient to show that the deed, absolute on its face, was intended to be, and is, in fact, a mere security for the payment of a debt. Before entering upon the discussions of the testimony, it will not be out of place to advert to some of the principles controlling Courts of equity in considering this question, especially in this State. The case of *Arnold* v. *Mattison,* 24 S. C. Eq. (3 Rich. Eq.) 153, is one of, if not the first case in our Courts in which this subject came under investigation, and the principle laid down in that case has been uniformly followed and approved in all subsequent cases. The language used in that case by the distinguished Chancellor, Job Johnson, is quoted with approval by Chief Justice McIver, in the case of *Petty* v. *Petty,* 52 S. C. 54, 29 S. E. 406, who emphasizes the same by quoting from Mr. Pomeroy (3 Eq. Jur., sec. 1196), as follows: "The presumption, of course, arises that the instrument is what it purports, on its face, to be, an absolute conveyance of the land. To overcome this presumption and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will arise." The distinguished Chief Justice then continues:

"Indeed the plaintiff's counsel very properly concedes this to be the rule which seems to be everywhere recognized, and is based upon the soundest reason; for before a Court of equity can be expected to convert a solemn written instrument, under seal, into something very different from what it purports, on its face, to be, there should be strong evidence to show that such was the intention of the parties to the instrument; to use the language of Johnson, Ch., in *Arnold* v. *Mattison, supra,* 'the evidence must be clear and convincing.' "

The same learned Justice in considering the same point in *Brown* v. *Bank,* 55 S. C. 69, 32 S. E. 720, says: "While it is undoubtedly true that a deed which appears on its face to be an absolute conveyance, may, in equity, be declared a mortgage, if the evidence is sufficient to show that such was the intention of the parties; yet, it is equally true that the presumption is that the deed is what, on its face, it purports to be, an absolute conveyance, and to establish its character as a mortgage, 'the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail.' " Citing 3 Pom. Eq. Jur., sec. 1196; *Arnold* v. *Mattison,* 24 S. C. Eq. (3 Rich. Eq.) 153; *Petty* v. *Petty,* 52 S. C. 54, 29 S. E. 406. "Whether any particular transaction amounts to a mortgage," continues the same learned Justice, "or to an absolute sale, with an agreement allowing the vendor to repurchase the land at a special price and within a limited time, must, to a large extent, depend upon its own special circumstances; for, the question finally turns in all cases upon the real intention of the parties as shown upon the face of the writings, or as disclosed by the extrinsic evidence." Quoting from 3 Pom. Eq. Jur., sec. 1195. See also 4 Kent, 143; *Hodges* v. *Weeks,* 31 S. C. 276, 9 S. E. 953; *Campbell* v. *Linder,* 50 S. C. 171, 27 S. E. 648; *Shiver* v. *Arthur,* 54 S. C. 184, 32 S. E. 310; *Cresnell* v. *Smith,* 61 S. C. 575, 39 S. E. 757; *Bass* v. *Bell,* 64 S. C. 177, 41 S. E. 893; *Miller* v. *Price,* 66 S. C. 85, 44 S. E. 584; *Wallace* v. *Johnston,* 129 U. S. 58, 9 Sup. Ct. 243 (32 Law Ed. 619);

*Bogk* v. *Gassart,* 149 U. S. 18 (37 Law Ed. 631), 13 Sup. Ct. 738.

Applying these principles to the facts of this case, what do we find? It appears that at the time of this transaction the firm that held the mortgage on the 20-acre tract owned by the plaintiff, were embarrassed, and had asked their creditors for an extension. In consequence of their own condition, they were pressing their debtors, among others this plaintiff, for payment of this mortgage debt. This debt had been due for over ten years, and during that long time, plaintiff had made but a single payment of $10.50. The defendant, W. M. Hamer, was not a capitalist or money-lender, and at that time he was engaged as a clerk in a general store at Little Rock. He was in possession of a small tract of land which adjoins the 20-acre tract of the plaintiff on which the lien of the mortgage rested, and also adjoins the 67-acre tract. A cousin of the plaintiff, a resident of the State of Rhode Island, was the owner of the latter tract, but the plaintiff was in the possession of the same as lessee and agent of the owner. Such were the relative positions of the plaintiff and said defendant at the time the negotiations between them commenced, with addition of the important fact, which is undisputed, that when said defendant was first approached by the plaintiff in regard to the purchase of the 67-acre tract, said defendant did not have the money himself, and his entering into any agreement, it seems, depended upon his ability to borrow a sufficient amount of money to pay the mortgage debt on the one, and the purchase price of the other, of said tract of land It further appears that it was only after said defendant ascertained that he could borrow the necessary amount from a kinswoman (and that only upon the indorsement of his note by his father—a pertinent circumstance) that the negotiations between the plaintiff and the defendant produced any definite result. In consequence of the agreement then entered into, the defendant himself prepared, and forwarded

to Rhode Island, to be executed by the owner, a deed for the 67-acre tract, the plaintiff's name being used as grantee. On its return by express, duly executed, with a draft attached for the payment of the purchase price above mentioned, defendant paid the draft, took the deed out of the express office, had it recorded and has had it in possession ever since. He, said defendant, also paid the amount due on the mortgage on the 20-acre tract, taking assignment of same, for the purpose, so he alleges and testifies, of protecting himself from any subsequent liens and incumbrances, it being impossible at that time to ascertain whether or not there were any such. Plaintiff being notified of these matters, went to Little Rock where said defendant was then clerking, taking with him his wife, and then and there executed to said defendant a deed in fee simple, with full covenants of warranty for both tracts of land. By prearrangement, T. B. Stackhouse, Esq., a notary public, was also present, and before him the wife relinquished in due form all right and claim of dower. On the same day, to wit, January 3d, 1894, said defendant executed an instrument of writing, denominated on its face "bond for title," and which is set out in the complaint. The plaintiff in his testimony, however, and his wife, in her testimony, positively contradicts this averment of the complaint, for each says that the word "interest" was read instead of the word "rent," a palpable mistake, regard being had to the context in which the word "rent" is used. It further appears that soon thereafter both tracts of land were transferred on the tax book to the name of the defendant, W. M. Hamer, he was charged with, and has paid annually, the taxes on the same, although the rate was varied from year to year during the period, ranging from nine to twenty-two mills. Each year, from 1894 to 1905—a period of eleven years—the plaintiff has given his note for payment of rent on said premises, all of which specified that it was given for "rent of the Charity Hamilton lands," except commencing with a note given in 1904, for

rent for the next succeeding year, when the notes specified
that each was given for rent of the arable land of the
"Charity Hamilton lands"—the alleged reason for this
change being hereinafter referred to.

Does not this bare recital of admitted facts furnish almost
conclusive evidence of the nature of the transaction between
the plaintiff and the said defendant? It will be noted that
the relation of mortgagor and mortgagee did not at that
time and had not existed between these parties. In fact, so
far as the testimony discloses, this is the first and only busi-
ness transaction that had then, or has since, taken place
between the plaintiff and said defendant. Had the relation
of debtor and creditor before existed, and if the deed in
this case was an agreement that the original mortgage should
be converted into an absolute conveyance, it might be argued
that a new consideration was necessary to the validity of
such an agreement. It may be, too, that a Court of equity
might look with suspicion upon such a transaction, by reason
of the maxim, "once a mortgage always a mortgage." But
even where such relation has existed, and the mortgagee
purchases the mortgaged premises, other than at a sale under
foreclosure—if the whole premises, then all the mortgage,
as in *Devereaux* v. *Taft,* 20 S. C. 555; if only a portion,
then *pro tanto* of the mortgage, as in *Tremmier* v. *Vise,* 17
*Id.* 499—is satisfied and extinguished. Not only had there
existed no business or other relations between these parties,
but, as mater of fact, plaintiff has never held any more than
the naked legal title to one of the tracts of land. It is
undisputed that said defendant paid the whole of the pur-
chase money, at the time of the purchase, of the 67-acre
tract, and though plaintiff's name appears as grantee in the
deed, it was never in his possession, but was turned over to
said defendant when returned by express, he had it recorded
and has had control and possession of it ever since.
Unexplained, such proof would create in favor of said
defendant a resulting trust (*Sexton* v. *Hollis,* 26 S. C. 231,

.1 S. E. 893; *Ex parte Trenholm,* 19 S. C. 135; *Catoe* v.
*Catoe,* 32 S. C. 595, 10 S. E. 1078; *Feaster* v. *Kendall,* 80
S. C. 30, 61 S. E. 200). When such proof is followed by
other proof, showing the actual execution and delivery of a
deed for the same property, absolute on its face, from the
nominal grantee to the party who paid the whole of the pur-
chase money, isn't the conclusion irresistible that the convey-
ance is in consequence and in performance of a previous
understanding and agreement to that effect? Does not such
proof indicate beyond a doubt that the conveyance is in
consequence of the payment of the purchase money and in
accordance with an agreement made at or before such pay-
ment?

But aside from all this (and I prefer to put my decision
upon the real merits of the action), isn't it inconceivable
that said defendant—a young man with no capital and
apparently little or no property of his own—would assume
the risk of borrowing this money, procuring his father to
become his surety for its payment, and take upon himself
all the trouble and labor of preparing, or having prepared,
the different instruments of writing entering into the trans-
action, having them recorded, etc., just for the privilege of
loaning the money to the plaintiff? Isn't it inconceivable
even, that the father would have involved himself, the loan
being the only object and inducement? If there was any
other consideration or motive, my attention has not been
called to it in argument, and the testimony is absolutely
silent on the subject'; for it appears conclusively, as before
stated, that this was the first and only business transaction
that ever took place between these parties. It must be
remembered, too, that this was at a time when the country
was laboring under, probably, the most stringent and dis-
astrous panic it has ever experienced. The testimony shows
that cotton, the money product of this section, was bringing
only from four and one-half to five cents per pound, and
that property had no fixed value, for the reason that there

was no money to buy it. In addition to the testimony to that effect, the Court will take judicial notice of the fact that business was practically at a standstill. Except in rare instances, money could not be procured at any reasonable rate of interest, regardless of the value of the security offered—that is, regard being had to values in times of ordinary prosperity. Isn't it making too great a demand upon the credulity of the ordinary mind to hold that these solemn instruments of writing do not show the real transaction and express the real intention of these parties, when executed under such circumstances, at such a time, and when these parties occupied, relatively, such positions? To sustain the contention of the plaintiff, we are not only compelled to disregard "the presumption that these instruments are what, on their face, they purport to be," but we have "to convert them into something very different," and to do violence to every motive and rule that usually actuate and control people in their business dealings with each other. It does seem inconceivable that the defendant would have assumed the risk and taken the trouble which he did (parenthetically, would his father have become his surety?) except upon the theory and assumption that the account he gives of this transaction is the true and correct one; that his answer, so emphatically sustained by the great weight of the testimony, gives the reasonable and common sense interpretation of the real contract between these parties. In fact, this is the only reasonable explanation of the action and conduct of the defendant, while that of the plaintiff is perfectly consistent with and can be explained upon the same theory. It appears from the testimony that both the 20 and 67-acre tracts adjoin and bound upon a small tract known as the "Lisias Stackhouse place," belonging to this defendant's father, but of which the defendant had control and possession. Doubtless defendant's motive in making the purchase and taking title to these two tracts, at the same time giving to the plaintiff the option of repurchasing same

upon the conditions set out in the bond for titles, was that
if the plaintiff complied with these conditions, he, the
defendant, would practically be out nothing, while if, on the
contrary, plaintiff did not perform those conditions (and
judging from his failure to pay the small amount of the
mortgage debt during the long time it had run, he, said
defendant, really did not expect him to do so), these two
tracts, united with the "Stackhouse" place, made a good
property, and at the price, would prove a good investment.
The considerations moving and the position in which the
plaintiff finds himself at this time, supports, as before stated,
and can be explained clearly, upon the same hypothesis,
to wit: that he was to make an absolute conveyance of the
property and be allowed the privilege of repurchasing the
same at any time within five years; in the meantime retain-
ing possession upon the payment of a reasonable annual
rent.   He was not only about to lose the title and posses-
sion of his tract of twenty acres because of his inability to
pay the mortgage debt resting on it, but to lose the oppor-
tunity of purchasing his kinsman's tract at a price which,
if the opinion of some of the witnesses is to be taken as a
criterion, was very low, and according to all, was very
reasonable.   By giving to the defendant, Hamer, an abso-
lute conveyance of both tracts upon consideration of the
payment by him of the mortgage debt on the one. and the
purchase money of the other tract, and obtaining from him
an opportunity and option of repurchasing both within a
given time and at a specified price, in the meantime and dur-
ing the period the option continued of force, to pay a
reasonable rent for use and occupation, plaintiff was thereby
enabled not only to retain possession of both tracts, but he
had the right and privilege to obtain the title by complying
with and performing the conditions of the bond for title.
Any other conclusion, it is perfectly clear to my mind, in
view of the written instruments in this case, the situation
of the parties, and the facts attending the execution of those

instruments, would be illogical, unreasonable, and contrary to the usual conduct of people.

But, it is argued, the discrepancy in the value of these lands and the price paid for them, is a strong circumstance to show that a mortgage must have been intended and not an absolute sale. There is nothing, probably, about which people more honestly differ than in their estimate of the value of property, especially at a period long distant from the time at which the valuation is fixed, and this case is not an exception to that rule. The viewpoint makes the greatest difference. Property looks more inviting and valuable when viewed at times when everything is bright and prosperous, than it does in days of adversity, disaster and distress. The witnesses, no doubt honestly, disagree as to the value of these two tracts of land at the time of this transaction, some putting it as high as $20.00 per acre, while others testify that $1,000.00 was a full price for it at that time. Most of the former class of witnesses candidly admit that they were not then, nor are they now, property owners, nor did they then, or now, have the money with which to purchase the lands in question. On the other hand, most of the latter class of witnesses were, and are, owners and dealers in property. All testify, however, that at the time there was practically no determinate value to be placed on any property on account of the scarcity of money, no property being sold. This scarcity was due to the low price of cotton, and that the result of the then unprecedented panic. There is one concrete fact, however, not dependent upon mere opinion, and that is the 67-acre tract was purchased for $770.00 —a little over $10.00 per acre. It must be remembered, too, that it was a part of this transaction that the vendor was to have the privilege or option of repurchasing this property at the price which constituted the consideration of its conveyance by him. This, no doubt, was sufficient reason why no hard bargain was driven and furnishes sufficient explanation of the discrepancy, if any, between the actual value of the

property and the price which defendant paid for it.    It is
further agreed that the defendant, instead of having satisfac-
tion entered on the mortgage on the 20-acre tract when he
paid the debt, had the mortgage assigned to himself, and this
is construed into being a circumstance to show that the deed
in question was intended as a mortgage.    Besides the fact
that defendant's purpose in doing this, as testified to by him,
is perfectly reasonable and businesslike, the effect of the act
is precisely contrary to that contended for by the plaintiff.
Why should the defendant desire to keep alive the old mort-
gage if the deed was executed and intended as a mortgage?
As additional security, it amounts to nothing, while upon the
assumption that the deed is an absolute conveyance, its
function is to protect the grantee against any incumbrances
subsequent to the original mortgage, and has been made to
serve that purpose, as in *Agnew* v. *Railroad,* 24 S. C. 18.
That is its sole purpose here, as declared by the grantee.
As against the mortgagor, the debt is extinguished by the
conveyance, and the defendant can never enforce it against
him.    Its only purpose and sole effect is to protect the
grantee against liens and incumbrances subsequent to its
date.    It is apparent, therefore, that taking an assignment
of the original mortgage on the 20-acre tract, instead of
showing that said deed was intended as a mortgage, shows
that it was intended to be exactly what it purports, on its
face, to be, an absolute conveyance.    *Vide Brown* v. *Bank,*
55 S. C. 74, 32 S. E. 720. · In this connection and as a corol-
lary to the position of plaintiff's counsel in regard to the old
mortgage, it is not out of place to invoke a test that has been
laid down by the Courts in determining the question whether
or not a deed, absolute on its face, was intended as a mort-
gage, such test being pressed by Mr. Pomeroy (3 Ed. Jur.,
sec. 1195), and quoted with approval by Justice McGowan
in *Hodges* v. *Weeks,* 31 S. C. 291, 9 S. E. 953, as follows:
"A general criterion has been established by an overwhelm-
ing consensus of authorities, which furnishes a sufficient test

in a great majority of cases.   The practical test is, whether there is a liability, independent of the conveyance and contract of conveyance, which the grantee can enforce against the grantor.   If a loan is made to the grantor at the time of the conveyance, and the continued existence of his indebtedness is evidenced by some collateral engagement given by the grantor, such as a note or bond, the case would be simply, and the transaction clearly, a mortgage.   But if this antecedent debt is wholly satisfied and extinguished by the conveyance, so that no liability remains under any circumstances against the grantor, then there is no mortgage, since there is no debt to be secured thereby.   In such case the surrender up by the grantee of the written evidence of the debt would be a very material crcumstance," etc.   Where is there, in this case, any evidence of "a liability, independent of the conveyance and contract of conveyance, which the grantee (Hamer) can enforce against the grantor" (the plaintiff)?   The assignment of the original mortgage?   As we have already seen, taking an assignment, instead of showing that the deed is a mortgage, more clearly indicates that it is what, upon its face, it purports to be.   For, as said by Associate Justice Jones in his clear, concise and logical opinion in *Creswell* v. *Smith,* 61 S. C. 579, 39 S. E. 757: "In the absence of positive evidence, it is unreasonable to suppose that the parties having already a mortgage should merely intend to substitute another for the same amount." Can the payment of the purchase money of the Evander Hamilton tract be so held?   The fact that the payment of the whole of the purchase money of this tract of land by the defendant, Hamer, was followed immediately by the conveyance to him of the land, furnishes indubitable proof that he was the real *bona fide* purchaser.   Were it otherwise, and had the money been loaned to the plaintiff, would it not have been the most natural and reasonable thing that the defendant would have required of the plaintiff some evidence of his indebtedness?   Yet no obligation of any kind was taken

or given. The plaintiff did not even subscribe the bond for titles in evidence of his liability to perform the obligation set out therein on his part, and there is not a scintilla of testimony anywhere showing a continuing and subsisting debt due and owing by the plaintiff to said defendant, the payment of which the deed, construed as a mortgage, secured, and which the plaintiff could enforce in a Court of justice.

I candidly confess that the account given by the plaintiff, in his effort to impress upon this transaction the characteristics of a mortgage, when unaided by suggestive questions, is too meagre and unsatisfactory to remove the presumption attaching to the papers themselves, and his almost stereotyped statement, on his several examinations, are far from being "clear, unequivocal and convincing." Such seems too, to have been the effect upon the able and generally correct master of this Court. In his report the master says: "Judging from the testimony of each (the master gives each credit for honesty and truthfulness) *the minds of the parties never met as to the real contract between them,* but each is bound by the deed and bond for title. The testimony of each sustains his view of the transaction, and it is probable that each one is correct as he understood it." How the master could, under the authorities, reach the conclusion he announces, after making the admission he did, is, apparently, an inconsistency which I cannot attempt to unravel. I have given, too, due consideration to the testimony of the other witnesses, all of which can be easily reconciled and is perfectly consistent with the clear, reasonable and consistent account by the defendant, Wm. H. Hamer, of this transaction, and with the conclusion reached by the Court. In using the expression "all," I mean such testimony as is consistent with itself and with admitted and undisputed facts. The fact that plaintiff made certain improvements upon the premises during his long tenancy, using the timber thereon for that purpose with the consent of the defendant, is far

more reconcilable with the conclusion that the deed executed by him is what, on its face, it purports to be, and that he was a tenant in possession with the option of repurchasing, than can some of his acts, and declaration be reconciled with the theory that he was a mortgagor owing a debt to the defendant, Wm. M. Hamer.

As the plaintiff also filed exceptions to the master's report, it may be proper to refer especially to them, although the conclusion reached has already practically disposed of them. These exceptions allege error on the part of the master in disregarding and dismissing the claim set up in the complaint on account of alleged usurious interest paid by the plaintiff and accepted by said defendant, Wm. M. Hamer. In his report, the master on this subject says: "In the complaint there is an allegation of usury, but in their arguments counsel did not insist upon this claim, and no testimony was adduced on this point." Without attempting to reconcile this difference of opinion between the master and the counsel, the conclusion the Court has reached practically disposes of this claim. Besides, this transaction took place in 1894, and our Civil Code provided (1 vol., sec. 1664) that "the provisions of this and the last two preceding sections shall not apply to contract made prior to the 2d day of March, 1898." The two preceding sections comprehending the statute law of this State regulating the rate of interest and the penalty for a violation thereof.

It is, therefore, ordered and adjudged that the report of the master be, and is hereby, overruled and reversed, and that the complaint in this action be dismissed.

Exceptions to the decree of the Circuit Judge:

I. Because the Circuit Judge erred in permitting the defendant, W. M. Hamer, over plaintiff's objection, to file his amended answer without legal notice to the plaintiff, or his attorneys, and without motion, more than two years after all the testimony had been taken and argument before the

master, nearly two years after the master's report was filed and more than a month after the final argument of the cause before his Honor; the plaintiff's first knowledge of the allowance of said amended answer being derived from the decree of the Circuit Judge, wherein the allegations of new matter contained in said amended answer are recited at length and relied upon.

II. Because his Honor erred in holding "that the complaint alleges, and plaintiff admits, that the instrument of writing designated 'bond for titles' executed by the defendant, W. M. Hamer, at the time of the transaction, contains and imports the contract entered into and to be performed by him;" it being respectfully submitted that this conclusion is entirely unsupported by the complaint or the testimony.

III. Because his Honor erred in holding, contrary to the overwhelming weight of the testimony, that the plaintiff was being pressed for the payment of his mortgage to J. W. Dillon & Son at the time of the transaction, constituting the subject of this action.

IV. Because his Honor erred in holding that if the transaction in question was a loan, as the plaintiff contends, then the defendant, W. M. Hamer, derived no profit from it, and, therefore, had no inducement to make it, because he borrowed the money therefor; it being respectfully submitted that it appears by the undisputed testimony of the defendant that he borrowed the money at eight per cent. (8%) interest and lent it to the plaintiff at ten per cent. (10%), thereby making a substantial profit.

V. Because his Honor erred in holding that the plaintiff was required to prove by clear, unequivocal and convincing evidence, that the transaction in question was a mortgage and not a conditional sale; it being respectfully submitted that where, as in this case, a separate written defeasance is executed by the grantee, contemporaneously with the execution of the deed, the transaction should, in doubtful cases,

be construed to be a mortgage, as Courts of equity look with
disfavor upon conditional sales.

VI. Because his Honor erred in overruling the master's
finding that the plaintiff executed his deed to the defendant,
W. M. Hamer, as security for a loan, and that the same was,
therefore, a mortgage, and in dismissing the plaintiff's com-
plaint, it being respectfully submitted that such finding of
the master is strongly supported by the greater weight of
the evidence.

VII. Because his Honor erred in holding that the contract
between the plaintiff and the defendant, W. M. Hamer, was
not usurious, it being respectfully submitted that said con-
tract being a mortgage it necessarily follows that the rate of
interest proved by the undisputed testimony is usurious.

VIII. Because his Honor erred in holding that patrol evi-
dence is not admissible to prove that the transaction between
the plaintiff and the defendant, W. M. Hamer, constituted a
mortgage and not a conditional sale.

*Messrs. Geo. E. Dargan* and *James R. Coggeshall,* for
appellants, submit: *Deed intended as security a mortgage:*
31 S. C. 400. *Purchaser of mortgage by owner of land:* 24
S. C. 18; 28 S. C. 452; 68 S. C. 102; 74 S. C. 42. *Parol
testimony to show absolute conveyance intended as mort-
gage:* 3 Rich. Eq. 153. *Written evidence for same purpose:*
118 U. S. 73. *Parol evidence inadmissible to show condi-
tional sale with right to repurchase:* 20 A. & E. Enc. of L.
(2d ed.) 937, 951: 27 Cyc. 1025-1027; *but admissible to
show mortgage:* 1 Jones Mtges. 279 and 258. *Absolute
deed and agreement to reconvey:* 81 Ala. 574; 1 So. 898; 80
Ala. 16; 72 Ala. 361; 39 Ala. 156; 12 How. (U. S.) 145; 7
Cranch 218; 2 Summ. 533, Fed. Cas. No. 4847; 2 J. J.
Marsh. 417; 3 *Ib.* 354; 2 N. J. Eq. 264; 2 Cal. 421; 1 Dev.
Eq. 373; 96 U. S. 332; 98 U. S. 514; 62 Mo. 202; 18 Iowa
504; 57 Wis. 412; 15 N. W. 394; 29 Grat. 27; 15 Minn. 69;
35 Vt. 125; 19 Conn. 29; 54 Miss. 90; Pom. Eq. Juris., sec.

1195; 27 Cyc. 1009 and 1010; 1 Jones Mtges., secs. 266, 274, 275, 328, 329, 325.

*Messrs. Gibson & Muller,* for respondents, submit: *Bond for titles mere option to purchase:* 20 Enc. L. (2d ed.) 942. *Bond evidencing contract parol testimony inadmissible to vary it:* Greenleaf Ev., sec. 277; 43 S. C. 501; 57 S. C. 69; 52 S. C. 54; 66 S. E. 85; 129 U. S. 58; 32 L. Ed. 619; 31 S. C. 276. *Court to construe written contract:* 3 S. C. 253; 17 S. C. 480; 45 S. C. 566. *Burden to show absolute deed to be defeasible on plaintiff:* 4 Kent 143; 2 Pom. Eq. Juris., sec. 1196; 3 Rich. Eq. 153; 31 S. C. 276; 50 S. C. 171; 52 S. C. 54; 54 S. C. 184; 55 S. C. 70; 61 S. C. 575; 64 S. C. 177; 66 S. C. 85; 129 U. S. 58; 149 U. S. 18. *Existence of debt necessary to mortgage:* 3 Pom. Eq. Juris., secs. 1195, 1196; 149 U. S. 18; 37 L. Ed. 631; 20 Ency. Law (2 ed.) 941; 1 Hilliard Mtges., p. 96, sec. 2, pp. 97-99; 31 S. C. 281; 50 S. C. 171; 55 S. C. 70; 61 S. C. 579. *Payment of taxes on land by grantee rebuts presumption of mortgage:* 50 S. C. 172, 173, 177; 50 S. C. 293. *So improvements by grantee:* 50 S. C. 39. *Burden on appellant to show error in findings of fact:* 83 S. C. 190; 92 S. C. 113.

*Messrs. Haynsworth & Haynsworth,* also for respondent, submit: *Burden on plaintiff to show absolute deed was intended as a mortgage:* 24 S. C. Eq. (3 Rich. Eq.) 153; 92 S. C. 501; 78 S. C. 178; 37 S. C. 489; 50 S. C. 169; 41 S. C. 163; 82 S. C. 555. *Burden on appellant:* 37 S. C. 510. *Grantee taking assignment of prior mortgage to protect title:* 55 S. C. 74. *Absolute conveyance with bond to reconvey:* 90 S. C. 490; 1 L. R. A. 240; 129 U. S. 58; 149 U. S. 17. *Amendment of answer:* Code Civil Proc. 224; 37 S. C. 122; 72 S. C. 567; 79 S. C. 270; 85 S. C. 450; 92 S. C. 40.

September 24, 1914.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an action for an accounting between the plaintiff and the defendant, W. M. Hamer, for moneys alleged to have been paid by the plaintiff to the latter at an usurious rate of interest on an alleged mortgage debt; to have a deed, absolute on its face, in conjunction with a contemporaneous written agreement, declared a mortgage; and to compel said defendant, W. M. Hamer, to convey the premises mentioned and described in said deed, to the plaintiff upon being paid the correct amount, if any, after being charged with the penalty of all usurious interest, due to the plaintiff by the defendant. The cause was referred to J. D. McLucas, Esq., master, to hear and determine all issues of law and fact, and report to the Court, who made his report, wherein he held that upon payment of the amount found by him to be due by the plaintiff to the defendant, that the defendant be required to convey to the plaintiff the lands described in the complaint. Exceptions were duly filed to the report of the master, and the cause heard by his Honor, Judge Shipp, who, on August 28, 1909, filed his decree, wherein he overruled and reversed the findings and recommendations of the master and dismissed the complaint; from this decree the plaintiff appeals. The report of the master and the decree of Judge Shipp should be included in the report of the case. The plaintiff's exceptions, except the first, complain of error on the part of his findings of facts and admitting incompetent evidence.

The first exception alleges error in permitting the answer to be amended. The first exception is overruled as the Judge had ample authority under section 224, Civil Proc.: *Fishburne* v. *Minott,* 72 S. C. 567, 52 S. E. 648; *Kennedy* v. *Hill,* 79 S. C. 270, 60 S. E. 689; *Bellamy* v. *Railway,* 85 S. C. 450, 67 S. E. 545; *Lowry* v. *Railway,* 92 S. C. 40, 75 S. E. 278, to permit the amendment and there was no abuse of that discretion. As to the other exceptions, we will not attempt to treat them separately. The deed from Hamilton to Hamer was absolute on its face, but at the same time it was exe-

cuted there was a bond to reconvey, which is set out by his Honor, Judge Shipp, in his decree.   The papers executed at that time show that the deed from Hamilton to Hamer, though absolute on its face, yet was accompanied by the bond executed at the same time, shows that the deed secured a debt, and was not an absolute sale, but that Hamilton had the right upon payment of the full amount due by him to Hamer to have Hamer reconvey the land to him; and the deed and bond executed at that time between the parties and the conduct and acts of the parties to the transaction show that each acted and construed it not to be an absolute sale, but a conditional sale, and upon payment of amount due by Hamilton to Hamer, Hamer was to reconvey the land to Hamilton.   We do not find any usury in the transaction between the parties.   The deed and bond themselves show this to be the real agreement between the parties.   While we have a deed absolute on its face we have a bond in writing executed at the same time to reconvey upon payment of the amount due.   This contract to reconvey was made at the same time the deed of conveyance was executed.   The bond gives the plaintiff the right to have the land reconveyed to him by Hamer upon payment of amount due by him to Hamer, and he is entitled to a decree of specific performance for this purpose.   This was the real intention of the parties as shown by the writings and sustained by the evidence in the case.   The plaintiff is entitled upon the payment by him to the defendant, Hamer, of the full amount agreed by him to be paid to Hamer to have the land reconveyed to him.   *Dinkins* v. *Simons*, 97 S. C. 261, 81 S. E. 638, and authorities therein cited.

The exceptions are sustained and judgment reversed.

MESSRS. JUSTICES HYDRICK and FRASER concur in the result.