17236

HARRY J. HOWARD and RUTH HOWARD, Appellants, v.
NORA BELL STEEN and J. B. STEEN, Respondents

(95 S. E. (2d) 613)

*Ney B. Steele, Esq.,* of Chesterfield, *for Appellants,*

352

*Messrs. Leppard & Leppard,* of Chesterfield, *for Respond-ents,*

December 12, 1956.

STUKES, Chief Justice.

Plaintiffs, who are now appellants, brought this action in May, 1953, for the possession of a tract of land containing 200 acres, more or less, in Chesterfield County, conveyed to them by the defendants by their general warranty deed dated May 1, 1939, which the defendants claimed was given as security for the payment of, quoting from the answer, "about $225.00, then loaned by plaintiffs", and that, therefore, the deed was intended as a mortgage.

It is settled by a long line of decisions, from *Arnold v. Mattison,* 3 Rich. Eq. 153, to *Evans v. Evans,* 226 S. C. 451, 85 S. E. (2d) 726, that one can prevail in his contention that a deed was intended as a mortgage only upon a high degree of proof. In *Petty v. Petty,* 52 S. C. 54, 29 S. E. 406, Chief Justice McIver cited 3 Pom. Eq. Jur., Sec. 1196, and *Arnold v. Mattison, supra,* for the postulate that the presumption arising from a deed is that it is what it purports to be, an absolute conveyance, and to overcome the presumption and establish its character as a mortgage, the evidence must be clear, unequivocal and convincing, otherwise the presumption will prevail, to which, he said, all the authorities agree. Chief Justice Baker remarked in *Jones v. Eicholz,* 212 S. C. 411, 48 S. E. (2d) 21, that the citation of all of our decisions which consistently follow the foregoing rule would tend to convert his opin-

ion into a digest. For collection of them see 14 S. C. Dig., Mortgages, Key 36-38.

The issues in the case at bar were referred to the master who found against the contentions of the defendants and recommended that the deed be sustained as such. Upon appeal the master was reversed by the trial court and the deed was held to have been intended as a mortgage. This appeal by plaintiffs followed and consideration of it requires review of the evidence.

Appellants are husband and wife. He is a junk dealer in Monroe, North Carolina, which is about 40 miles from the land in dispute. The respondents, the Steens, also husband and wife, had been, and continued after execution of the deed, in the habit of borrowing money from appellant Howard. The latter testified that the Steens were indebted to him in about the sum of $300.00 when they applied to him for additional money and he refused to accept a mortgage whereupon it was agreed that the land would be conveyed to him by deed for the existing indebtedness and the additional sum of $225.00, which latter is the stated consideration in the deed and was paid to the Steens upon execution and delivery of the deed. The latter testified that a portion of the land was "will land" of Mrs. Steen and, in effect, that she could not convey good title to it. The deed was prepared by a Monroe magistrate, who was such for many years until his death, and he was also United States Commissioner and Commissioner of Deeds for South Carolina in North Carolina. He typed the deed in the presence of the Steens who executed it in his office, she also renounced dower, and it was delivered to Mr. Howard who kept it unrecorded until 1943 when it was placed on record.

The Steens testified that the witnesses to the deed were small children, ten or twelve years old, who were called from play in the yard to sign as witnesses. However, appellants, in reply, produced one of the witnesses to the deed, who was living in Charleston at the time of trial. He was the son of the magistrate who prepared the deed and super-

vised the execution of it. He testified that he was then about fifty-six years old so was around forty at the time of the execution of the deed, and he said that the other witness was his niece and she was about twenty-two years old when she witnessed the deed. She was living in Delaware at the time of the trial and was not produced as a witness. His testimony was clear and convincing and was to the effect that his father, the draftsman of the deed, stated in the presence of the Steens that the instrument was a deed, and they executed it in the presence of him and the other witness. The testimony of this witness corroborated the testimony of appellants concerning the preparation and execution of the deed and it is noted that he was cross examined only to obtain his signature in court and compare it with that on the deed, after which there was no further interrogation of him by respondents' counsel.

After the recordation of the deed the land was assessed for taxes in the name of appellant Howard. He produced receipts for taxes for some of the years after the execution of the deed, but so did the respondents for other years. This apparent inconsistency was reasonably explained in the testimony of appellant Howard that he gave respondents the money to pay the taxes during some of the years and did not obtain the receipts. After this action was brought and upon the advice of her counsel, Mrs. Steen went to the courthouse and changed the tax assessment to her name.

It is of significance that although respondents testified that they thought they were executing a mortgage, instead of a deed, they admitted subsequent knowledge of the nature of the instrument, which they obtained from the courthouse in the year 1945, but did nothing about it and, indeed, continued to borrow money from appellants. They alleged in their answer that the instrument was given to secure the payment of $225.00 (the recited consideration) but testified that they were paid $300.00 upon the execution and delivery of it.

The grantors remained on the land and they testified that during some of the years after the execution of the deed they *sharecropped* the land with Howard, which implies that he was the owner of it. They alleged in their answer that this relation existed from the years 1939 to 1946. It is common knowledge and is recognized in our statutes and decisions that ordinarily a sharecropper is not the owner of the land which he works under such an arrangement and, on the contrary, that the other party to the sharecrop agreement is the owner. Code of 1952, § 40-401 *et seq.* and the cases cited in the footnotes. 52 C. J. S., Landlord and Tenant, § 793 et seq., p. 717.

Reference has been made to the testimony of respondents that the deed form was filled in in handwriting, but the fact is that it was typewritten. There are other glaring contradictions of the testimony of respondents which need not be recounted; they tend to discredit all of it. Both testified that they continued to borrow money from appellant Howard after the execution of the deed and even after discovery by them of the nature of it; and made payments to him, which was substantiated by the production of receipt of Howard of a payment from Mrs. Steen of $150.00, dated Nov. 13, 1940 (Howard testified that this was on the purchase of a truck and had nothing to do with the farm) but they could not say whether they were indebted at the time of trial. They did not testify to the terms of the debt, when payable, rate of interest, etc., which they claimed was secured by the deed.

Mr. Steen is illiterate, which influenced the trial court, while Mrs. Steen is literate but unlearned. However, from the evidence it is apparent that the Howards are not much superior in this respect and they were able to produce few records relating to the transaction.

Several disinterested witnesses testified to statements by Steen at various times after execution of the deed which were to the effect that the land had been conveyed to appellant Howard and that the latter is the owner of it.

The value of the land was not satisfactorily established by the evidence. Mr. Steen testified that when he went upon it, inferably at about the time the deed was made, quoting, "it was all in the woods * * * but about six acres." He declined to estimate the value, saying that "sand hill land's not worth much at its best", and it is not worth ten or fifteen dollars an acre, having no cotton acreage; some of it might be worth $10.00 and some not worth $5.00, quoting further from his testimony, "some of it's washed away. It's loose land and some of it will wash away on you. There's no hill land." Finally, led by his counsel, he testified that the land is worth eight or ten times more than $300.00, in the aggregate. There was no substantial evidence of the value of the property at the date of the deed or at the present time. However, it is within common knowledge that real estate generally has greatly increased in value since the date of the execution of the deed. Not to be overlooked as a detriment to the value of this land is the question of the title to a portion of it which is raised by the testimony of respondents, and mentioned above.

The foregoing is by no means a full review of the evidence, and it emphasizes the weaknesses of respondents' case which we think demonstrates that it falls far short of the quantum of proof which is required for the court to adjudge a deed, regular on its face, to have been intended as a mortgage. Also of influence is the consideration that the master, with whose conclusion we agree, had the advantage of seeing the witnesses, observing their demeanor and thereby better evaluating their testimony.

The judgment is reversed and the case is remanded for further proceedings consistent herewith.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.