## 17992

Frank BRITTON, Appellant, v. Margaret H. AMOS and the Merchants National Bank and Trust Company of Syracuse, New York, as Executors of the Will of Charles L. Amos, Respondents.

*(128 S. E. (2d) 161)*

*Messrs. McEachin, Townsend & Zeigler,* of Florence, and *Thompson & Poteat,* of Georgetown, *for Appellant,*

*Messrs. C. C. Grimes, Jr.,* and *Smith & Moore,* of George-town, *for Respondents.*

November 16, 1962.

BUSSEY, Justice.

This action was commenced in March 1954 against one Charles L. Amos, subsequently deceased, the present respondents being his legal representatives.

The complaint seeks to have a deed, absolute on its face, declared a mortgage on the ground that it was fraudulently obtained, and in a second cause of action seeks the recovery of actual and punitive damages for the wrongful cutting of timber while the real estate covered by the said deed was occupied by Amos.

The answer denied all material allegations of the complaint; alleged that the real estate involved was conveyed to Amos by the Forfeited Land Commission of Georgetown County, as well as by the deed under attack; and set up the

affirmative defenses of adverse possession, the six year statute of limitations, and the ten year statute as against the plaintiff's occupancy of the premises.

The case was tried before a jury and at the conclusion of plaintiff's case, an order of nonsuit was entered by the trial judge, which order is here appealed from.

Involved in this action is a tract of land containing approximately seventy acres, being a portion of a tract of one hundred forty acres formerly owned by one Friday Baker. The said Baker moved away in 1913, and thereafter died in 1916, leaving surviving him a brother, Lewis Baker, who lived until 1923.

The plaintiff apparently never lived upon the land in question but went into possession thereof as a tenant about 1913, and farmed the same, retaining his status as a tenant until some time shortly following the death of Lewis Baker in 1923. The plaintiff then entered into an agreement with the heirs of Friday and Lewis Baker to purchase the property, and thereafter occupied and farmed the property under his contract until the 27th day of April 1935, at which time he was given a deed by the Baker heirs. During the period of approximately twelve years, plaintiff had paid the agreed purchase price of two hundred eighty dollars in several installments, except for the sum of thirty-one dollars for which amount he gave a mortgage at the time he obtained his deed. The said mortgage was never recorded but plaintiff testified that he thereafter paid the same.

In the meantime, the Sheriff of Georgetown County had, on August sales day 1934, sold the property to the Forfeited Land Commission of Georgetown County by virtue of a tax execution for the year 1932 issued against Friday Baker, the Sheriff's deed to the Forfeited Land Commission being dated October 30, 1935.

The plaintiff is an illiterate Negro, about ninety years of age at the time of the trial. Under these circumstances, it is understadable that his testimony and his memory were to

some extent vague. He testified that at some time, just when does not appear, he received some notice about taxes on the property, and, times being hard, he asked Mr. Amos, for whom he was then working, to pay the taxes for him. He further testified that as a result of this approach, he was taken to an attorney's office in Georgetown where he signed what he thought was the "bird rights" to his property. What the plaintiff actually signed on this occasion was a deed to the property, absolute on its face, said deed being executed on the 13th day of March, 1936, and reciting a consideration of eighteen dollars sixty-two cents, which the plaintiff testified he never received. On the same date, Amos obtained a deed to the property from the Forfeited Land Commission of Georgetown County in which the consideration was recited as being fifty-five dollars thirty-eight cents. Both deeds to Mr. Amos were duly recorded on the 31st day of March, 1936.

It is not clear from the record just what taxes on the property still remained unpaid, if any, after Mr. Amos obtained said deeds, but, in any event, there is no evidence that plaintiff ever paid any taxes on the property for any year, although he testified that he attempted, without success, to do so on several occasions following his transaction with Mr. Amos.

The complaint alleges, but no evidence was offered to prove, that the plaintiff repeatedly offered Mr. Amos the amount stated as the consideration in the purported deed, and the amount due for the payment of taxes in default. The complaint alleges nothing was said to plaintiff in regard to the contents of the paper in the lawyer's office when taken there by Mr. Amos, but plaintiff testified that he was told by the lawyer (now long since dead) that he was signing away the bird rights.

Whatever the understanding or misunderstanding was between the plaintiff and Mr. Amos, in the Spring of 1937 the plaintiff, preparatory to planting corn, plowed up oats

which had been planted upon the property by Amos, following which he was caused to be arrested for trespass by Amos. He was thereafter twice again arrested for trespass, the exact dates of such arrests not appearing in the record. On the occasion of each arrest he paid a fine. From the time of his first arrest in the Spring of 1937 plaintiff, at one time or another, consulted four different attorneys about his controversy with Mr. Amos before securing the services of his present counsel, but no litigation was commenced on behalf of plaintiff until the present suit.

About the year 1937 Amos cut certain timber from the tract of land of which plaintiff had knowledge at the time. The amount of timber cut was estimated by a forester from the old stumps as being about thirty-five thousand board feet.

In support of his contention that the deed was in fact a mortgage and in anticipation of the defense of adverse possession, plaintiff offered considerable evidence as to the extent of his possession from 1936 until the commencement of this action. A nonsuit having been granted, the record, of course, does not contain the defendant's evidence on this point.

The exceptions are numerous and raise many questions. We shall not attempt to discuss each one of them, but will dispose of all questions which we deem properly before us in the light of the record, the pleadings and the theory or theories upon which the case was tried.

■ The first cause of action seeks to have declared a mortgage a deed which was absolute on its face. The fundamental law governing such a case has been repeatedly stated by this court in a quotation from 3 Pom. Eq. Jur., Sec. 1196, as follows:

"The presumption of course arises that the instrument is what is purports on its face to be,—an absolute conveyance of the land. To overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail."

See: *Howard v. Steen,* 230 S. C. 351, 95 S. E. (2d) 613; *Evans v. Evans,* 226 S. C. 451, 85 S. E. (2d) 726; *Jones v. Eichholz et al.,* 212 S. C. 411, 48 S. E. (2d) 21.

As was said in the *Jones case,* "The principle upon which this doctrine is founded is that it would be a virtual fraud for the grantee to insist upon the deed as an absolute conveyance, when it was understood at the time to be intended merely as a security and in reality as a mortgage."

The question before us with respect to the first cause of action then is simply whether the plaintiff offered any clear, unequivocal, convincing testimony that the deed here, absolute on its face, was in fact a mortgage. From the facts above recited, it should be readily seen that while the plaintiff offered evidence tending to prove fraud, he offered no evidence whatsoever tending to prove that the deed in question was in fact intended by either him or Mr. Amos as a mortgage or other security, let alone any clear, unequivocal and convincing testimony to such effect.

As was pointed out in the case of *Howard v. Steen, supra,* there was no evidence as to the value of the property at the date of the deed. Just as in the cited case, it is within common knowledge that real estate has generally greatly increased in value since the date of the execution of the deed. Again, as in the cited case, not to be overlooked here as a detriment to the value of this land is the fact that the property had already been conveyed to the Forfeited Land Commission of Georgetown County by the Sheriff for delinquent taxes. In brief, there is nothing before us to show that Mr. Amos did not pay the full depression value of the land upon obtaining deeds from both the Forfeited Land Commission and the plaintiff.

We have, of course, not fully reviewed the evidence, but have sufficiently reviewed it to demonstrate that it falls far short of the quantum of proof, which is required for the court to adjudge a deed regular on its face to have been intended as a mortgage.

The second cause of action is based upon the cutting of timber by Amos about 1937. The plaintiff, apparently realizing that any ordinary action for trespass was long since barred by the statute of limitations, proceeded on the theory that the relationship of mortgagor and mortgagee existed between the parties, and that the damages sought to be recovered in this cause of action would be merely an accounting which Amos would have to make as mortgagee for having invaded and taken something from the property without having the right to do it. It thus became necessary for the plaintiff to prove the first cause of action as a foundation for the second alleged cause of action, and plaintiff having failed to prove the first cause of action, there, of course, was no basis of recovery upon the second cause of action.

The only other question raised by the exceptions which we think it necessary to discuss is the contention on the part of the plaintiff that the circuit judge erred in failing to declare the action one in equity, and to submit to the jury only specific issues of fact.

This case had been tried before Judge Greneker and a jury at a previous term of court in which trial a mistrial was declared. The record does not disclose whether or not the point now under discussion was made at the first trial. In any event, when the case was called for trial at the next jury term, counsel for the plaintiff made the following motion:

"As we see this case, it is purely an equitable matter and we would like to proceed on that basis and then if the court desired to submit any issues to the jury, it could be done."

After some argument of counsel, which is not contained in the record, the court ruled as follows:

"I don't see any reason for changing the method of trial."

The second cause of action as stated in the complaint was susceptible of the construction that it stated an action at law

rather than an action in equity, and it was not until later in the trial that it appeared from the evidence and the statements of counsel that plaintiff sought to recover on the second cause of action upon an equitable theory.

Even if there be any error in the judge's ruling on this point, which under the circumstances does not clearly appear, any such error was without prejudice to the rights of the plaintiff.

In reviewing the evidence in his written order, the circuit judge, inter alia, made the following statement:

"Plaintiff makes no contention, nor is there any evidence to the effect that either plaintiff or defendants' testate actually intended the deed in question to be a mortgage at the time it was executed or at any subsequent time. There is no evidence of any agreement or understanding between plaintiff and defendants' testate to the effect that the deed in question was to be security for any loan or advances made or to be made on the part of defendants' testate. In short, plaintiff's case falls short of the degree of proof necessary to establish that the deed in question was in fact a mortgage."

The circuit judge having correctly decided that the plaintiff simply failed to prove his alleged causes of action, it is immaterial whether he decided such as a judge sitting in equity, or decided such by an order of nonsuit. He, of course, heard all of the evidence and his findings were fully justified by the evidence. The plaintiff, upon the record before us, would have been entitled to nothing more had the judge granted the motion made by plaintiff at the inception of the trial.

As above mentioned, considerable evidence was offered on behalf of the plaintiff with respect to the possession of the property. A number of exceptions deal with the rights of the respective parties as a result of adverse possession, but we do not think these questions are properly before us in the state of the record. What rights, if any, the plaintiff has to the premises in question on the theory of adverse pos-

session or by virtue of any theory other than his claim that the deed was in fact a mortgage, is not properly before the court at this time, and we intimate no opinion thereabout.

For the reasons hereinabove set forth, all exceptions are overruled and the judgment of the lower court is affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.