# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Roger Wendell Walker, as the Personal Representative of the Estate of Kenneth Ray Walker and individually as a surviving child and Devisee of the Decedent, Kenneth Ray Walker (d/o/d 09/20/2008), Jimmy Ray Walker, and Wilson Whitney Walker as surviving children and Devisees of the Decedent, Kenneth Ray Walker, who died testate on 09/20/2008, Petitioners,

v.

Catherine W. Brooks, Respondent.

Appellate Case No. 2013-001377

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Colleton County
R. Thayer Rivers, Jr., Special Referee

---

Opinion No. 27583
Heard May 5, 2015 – Filed October 28, 2015

---

## AFFIRMED IN PART AND REMANDED

---

Gregory S. Forman, of Gregory S. Forman, PC, of Charleston, for Petitioners.

Everett H. Garner and Benjamin A. Dunn, II, both of Holler, Garner, Corbett, Ormond, Plante & Dunn, of Columbia, for Respondent.

---

**JUSTICE HEARN:**    In this familial dispute over property, it is uncontradicted that Kenneth Walker (Decedent) deeded to his sister, Catherine Brooks, approximately forty acres of property in two separate transfers before his death.   The question is whether the property was deeded to Brooks freely, or subject to an equitable mortgage which would require her now to return it to Decedent's estate.   We hold no equitable mortgage exists; accordingly, we remand.

## FACTUAL/PROCEDURAL HISTORY

Decedent owned and lived on a 200-acre farm in Colleton County.  In 1996, Decedent conveyed 26.52 acres of the farm to Brooks for the purported amount of $13,250.00.[1]  In 2002, Decedent conveyed an additional 15.16 acres to Brooks for $5.00.

Brooks was Decedent's older sister, and the two had a close relationship. Beginning in 1993, Brooks helped Decedent with his outstanding debts, paid his electric and telephone bills, bought groceries, and gave him cash for living expenses.  Additionally, Brooks helped Decedent receive social security benefits and served as trustee for those benefits.

According to Brooks, Decedent gifted the property to her in exchange for this considerable emotional and financial assistance; however, Brooks did not exercise dominion or control over the property after the conveyances.  Not only did Decedent continue to live and work on the farm, but he often cashed the rent checks from a commercial tenant occupying a building there, only periodically giving money to Brooks.

In 2004, at Decedent's request, Brooks handwrote a note stating the following:

---

[1] Brooks testified this amount was inserted by Decedent at the request of the closing attorney, but admitted she did not pay anything for the property.

[Decedent] would like for all the money from Larry Herndon[2] to be paid to [Brooks] until she is paid sixty thousand dollars, at that time she is to release to [Decedent] all the property off Cooks Hill Road at Walterboro, S.C. Any money [Decedent] pays [Brooks] will be toward the sixty thousand dollars.

The parties also generated a ledger documenting payments purportedly made from Decedent to Brooks. The ledger begins at $60,000 and the last entry shows $27,400 remaining to be paid. Brooks' initials appear next to many of the entries.

Before Decedent's death, his attorney sent a letter to Brooks citing the above agreement, and requesting her to tender the deed in exchange for $2,893.87.[3] Brooks refused. After Decedent's death, his son and personal representative, Roger Walker, offered to pay Brooks $27,400 in exchange for her returning title to the farm. After Brooks denied his offer, this dispute arose.

Initially, Brooks filed a complaint against Walker for converting funds and resources related to the property she alleged rightfully belonged to her. Walker then filed a separate complaint for specific performance of a contract for sale of land and a declaratory judgment action based on an express, constructive, or resulting trust theory. The cases were consolidated and tried before a special referee.

The special referee held that although testimony from both parties was inconsistent, the handwritten note and ledger showed Decedent was indebted to Brooks at the time of his death, and thus the conveyance was intended as security for this debt. Accordingly, the special referee held that "while this is equally susceptible of being a resulting trust, I am more of the opinion that it so closely tracks the facts of [*F. Gregorie & Son v. Hamlin*, 273 S.C. 412, 257 S.E.2d 699 (1979)] that it is more properly an equitable mortgage." The special referee held the estate was entitled to the property upon payment to Brooks of $27,400, and did not reach Walker's specific performance argument.

Brooks appealed to the court of appeals, and Walker raised specific

---

[2] Herndon paid for the right to remove sand from Decedent's property and discharge soil and waste water onto the property deeded to Brooks.
[3] Inexplicably, this is the amount Decedent's attorney calculated was still owed to Brooks.

performance as an additional ground to sustain the special referee's order. The court of appeals reversed the special referee's equitable mortgage finding, but did not address Walker's specific performance argument. *Walker v. Brooks*, 403 S.C. 212, 742 S.E.2d 869 (2013). This Court granted certiorari to review the opinion of the court of appeals.

## ISSUE PRESENTED

Did the court of appeals err in reversing the special referee's finding that an equitable mortgage existed?

## STANDARD OF REVIEW

On appeal from an action in equity, this Court may find facts in accordance with its view of the preponderance of the evidence. *Townes Assoc., Ltd. v. City of Greeneville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). However, we need not disregard the findings of the special referee, who was in a better position to weigh the credibility of witnesses. *Tiger, Inc. v. Fisher Argo, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989).

## LAW/ANALYSIS

Walker argues the court of appeals erred in reversing the special referee's finding that an equitable mortgage existed. We disagree.

"[A]n equitable mortgage is a transaction that has the intent but not the form of a mortgage which a court will enforce in equity to the same extent as a mortgage." 59 C.J.S. *Mortgages* § 36. Stated simply, where one party conveys a deed to another, but the evidence surrounding the transaction indicates the land transfer was intended only to secure a debt, a court may refuse to treat the conveyance as a sale and instead equitably impose on the parties the mortgage they intended to create. *Id.*

"The essential feature or essence of an equitable mortgage is the intent of the parties." *Id.* The intent of the parties is to be evaluated at the time of conveyance. 59 C.J.S *Mortgages* § 71. As explained in § 71:

> The character of the transaction is fixed at its inception, and as a general rule, the only facts and circumstances that may be considered in determining whether a mortgage was intended are those which

existed at the time the instrument was executed. Subsequent developments may throw a light on the original meaning of the parties, however.

*Id.*; *see Gregorie*, 273 S.C. at 417, 257 S.E.2d at 701 ("[A court] must search for the intention of the parties at the time of the transaction and not as any of them may interpret their intentions at this time."); *see also Williams v. Griffith*, 35 N.E.2d 95, 97 (Ill. App. Ct. 1941) ("The conveyance, in such instance, takes effect when delivered, and its character is fixed at that time, and the intention of the parties at that time is controlling."). The existence of an equitable mortgage must be shown by clear and convincing evidence. *Gregorie*, 273 S.C. at 434, 257 S.E.2d at 709 (Ness, J., dissenting).

This Court recognized the existence of an equitable mortgage in *Gregorie*, a case relied on heavily by the special referee. There, the Gregorie family owned a 600-acre piece of property in Mount Pleasant called "Oakland Plantation." *Id.* at 415, 257 S.E.2d at 700. The family also owned an oil distributorship, known as F. Gregorie & Son, which was experiencing financial difficulty. *Id.* Osgood F. Hamlin, neighbor and friend to the Gregorie family, had loaned money to the business in the past. *Id.* Facing heavy debt and possible foreclosure of its business from major creditors, F. Gregorie & Son entered into a transaction which had the effect of borrowing $35,000 from Hamlin. *Id.* at 416–17, 257 S.E.2d at 701. The Gregorie family in turn deeded to Hamlin its 600-acre tract in Mount Pleasant. *Id.* Contemporaneously with this loan, the parties entered into an agreement which provided "the aforesaid tract of land would simultaneously be conveyed by Ferdinand Gregorie to O.D. Hamlin as security for his additional financial assistance," and provided the Gregorie family could repurchase the property from Hamlin for $79,000. *Id.* at 418, 421, 257 S.E.2d at 702–03.

Analyzing the transaction to determine whether the conveyance to Hamlin was an outright sale or an equitable mortgage, the court found it important that prior to the conveyance, there was an existing debt between F. Gregorie & Son and Hamlin. *Id.* at 419, 257 S.E.2d at 702. The Court also noted that because the parties entered into the separate agreement contemporaneously with the conveyance, it evidenced the parties' intentions for the property to act as security. *Id.* at 422, 257 S.E.2d at 703. Additionally, the Court considered that the discussions and dealings between the parties prior to the conveyance never indicated that an outright sale was contemplated. *Id.* at 423, 257 S.E.2d at 704. Finally, the Court found it crucial that although the debt between the parties was

only $35,000, the property was valued at approximately $600,000. Such a great disparity, according to the Court, indicated the conveyance of the property to Hamlin was intended only as security, and not a sale. *Id.* at 424–25, 257 S.E.2d at 705.

We find the facts of the instant case inapposite to the facts of *Gregorie*. Walker offers no evidence—apart from his own self-serving testimony and the fact Brooks did not exercise control over the property—that the parties intended to establish an equitable mortgage *at the time* the property was conveyed to Brooks. While Walker's argument seemingly depends on the efficacy of the handwritten note and ledger, his own testimony indicates these were conceived and completed at a later time:

> Q: Tell us what your understanding of [the ledger] was, or your knowledge of it.
>
> A: How this got started is shortly after 2002, when the last deeds were done . . . my dad wanted to -- when he gave her money, he wanted to -- he wanted a ledger to show the balance of what he owed her.
>
> Q: Okay.
>
> A: He asked her what he owed her. He told her to write down a figure. Whatever he owed her, he wanted to pay her. So she picked up a pad and wrote down $60,000 is where daddy had to start from paying her back the loan in order to get his land back.

While the ledger and handwritten note may be an indication the parties entered into a subsequent contract that required Brooks to reconvey the property to Decedent for the sum of $60,000, of which Decedent paid $32,600 before his death, these are facts which are more relevant to Walker's specific performance claim than to his attempt to establish an equitable mortgage.

Further, many of the characteristics of the relationship the Court found were indicative of a debtor-creditor relationship in *Gregorie* are not present here. Most importantly, there is no contemporaneous writing indicating the property was to serve as security for any debt Decedent owed to Brooks. Additionally, while the Court in *Gregorie* found it significant that discussions between the parties prior to the conveyance never indicated that an outright sale was contemplated, this was so

because the parties were involved in business together and Hamlin had loaned money to F. Gregorie & Son before. Here, the same consideration is less significant where the parties had a close familial relationship. Moreover, the Court found that where Oakland Plantation was valued at nearly twenty times more than the purported consideration, it tended to establish the Gregorie family could not have intended to sell the land for that amount. Here, the deeds conveyed to Brooks recited the collective consideration of $13,255 and the special referee found the property was valued at approximately $120,000 at the time of conveyance. Not only is this disparity much less than in *Gregorie*, but the close familial relationship between Decedent and Brooks also ameliorates its possible significance because it is more likely a family member would sell property at a grave discount to another family member than would a business partner or past creditor.

It is well-settled that an equitable mortgage must be established by clear and convincing evidence. Based on our review of the record, we find no such evidence that an equitable mortgage was formed between Decedent and Brooks. Accordingly, we affirm the court of appeals on this issue.[4]

## CONCLUSION

For the reasons stated above, we affirm the court of appeals' opinion finding no equitable mortgage exists. Because the special referee did not reach the issue of specific performance, we remand for a determination on that claim.

**TOAL, C.J., PLEICONES and BEATTY, JJ., concur. KITTREDGE, J., dissenting in a separate opinion.**

---

[4] Contrary to the dissent's assertion, we clarify that we have established no "categorical rule" that only evidence created contemporaneous with the conveyance can be considered in support of an equitable mortgage. We recognize that subsequent events and writings may assist a factfinder in determining the intent of the parties *at the time* of the conveyance. 59 C.J.S *Mortgages* § 71. Here, the lack of a contemporaneous writing for reconveyance tends to show the parties did not intend a mortgage; however, it is but one important consideration in the fact-intensive inquiry this Court must—and has—engaged in. To the extent the dissent believes application of this analysis results in an opposite conclusion, we respectfully disagree.

**JUSTICE KITTREDGE**:  Because I believe the court of appeals erred in reversing the special referee's finding of an equitable mortgage, I dissent.  I would reinstate the trial court judgment.

I take no issue with the majority's statement of the facts.  I further agree with the proposition that evidence supporting an equitable mortgage generally occurs contemporaneously with the conveyance.  My concern is that the Court today has transformed this general rule into a categorical rule.  These are equitable, fact intensive inquiries designed to discern the intent of the parties.  Application of the majority's categorical rule may in some instances lead to a result contrary to the parties' true intentions; I believe that is precisely what today's result achieves.

I further note that the black letter law cited by the Court rejects the majority's adoption of a categorical rule, for the law speaks to the "general rule" and recognizes that "[s]ubsequent developments may throw a light on the original meaning of the parties, however."  59 C.J.S. *Mortgages* § 71; *see F. Gregorie & Son v. Hamlin*, 273 S.C. 412, 421–22, 257 S.E.2d 699, 703 (1979) (rejecting the notion that "the mere fact that a contract to reconvey was executed simultaneously with the deed creates in legal effect a mortgage" and instead finding such a fact is rather a "strong circumstance to be considered in the determination between a deed absolute and an equitable mortgage").

It is the absence of evidence contemporaneous with the conveyance that disposes of the equitable mortgage claim for the Court: "Most importantly, there is no contemporaneous writing indicating the property was to serve as security for any debt Decedent owed to Brooks."  I do not view the absence of a contemporaneous writing as controlling.  I concur with the special referee that notwithstanding the absence of a contemporaneous writing, the evidence overwhelmingly supports the imposition of an equitable mortgage.  Following the transfer, Kenneth Walker continued to act in every respect as the owner of the property.  Similarly, before Walker died, Catherine Brooks never claimed ownership or took *any* action consistent with ownership.  The acknowledgement written and signed by Brooks, albeit not contemporaneously with the conveyance, leaves no doubt that the parties intended a debtor-creditor relationship, with Brooks to convey the property back to Walker once the debt was paid in full.  I would find the totality of the circumstances supports by clear and convincing evidence a finding of an equitable mortgage.

Because Walker established an equitable mortgage, I would not reach Walker's alternative sustaining ground.  Yet given the majority's rejection of an equitable

mortgage, the remand to consider Walker's specific performance argument is proper.